Joyce WARREN, Plaintiff

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Case No. 10–62241–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 12, 2011.

Adam Scott Neidenberg, Adam Neidenberg, PA, Fort Lauderdale, FL, for Plaintiff.

Carlos Javier Raurell, United States Attorney's Office, Miami, FL, for Defendant.

### ORDER GRANTING COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

ADALBERTO JORDAN, District Judge.

Following a *de novo* review of the record, I adopt the supplemental report and recommendation issued by Magistrate Judge Dube [D.E. 30], to which no objections have been filed. Accordingly, Commissioner Astrue's motion for summary judgment [D.E. 21] is granted, and Ms. Warren's motion for summary judgment [D.E. 18] is denied. A final judgment will be issued separately.

DONE and ORDERED.

### SUPPLEMENTAL REPORT AND RECOMMENDATION

ROBERT L. DUBE, United States Magistrate Judge.

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. # 18) and the Motion for Summary Judgment filed by the Defendant (D.E. # 21) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. On June 28, 2011, this Court entered a Report and Recommendation that the Motion for Summary Judgment filed by the Plaintiff be granted in part; the Motion for Summary Judgment filed by the Defendant by denied; and the decision of the Commissioner be reversed and remanded. (D.E. # 26). The Defendant filed objections to this Report and Recommendation arguing that the ALJ's hypothetical question and the jobs identified by the vocational expert accounted for the Plaintiff's limitations in concentration, persistence, or pace. (D.E. # 27). Based on this argument, the Defendant's objections were sustained and this cause was re-referred by Judge Jordan for a report and recommendation on the remaining issues in the cross-motions for summary judgment. (D.E. # 18, # 21).

The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Joyce Warren (hereinafter "Warren"

or "Plaintiff"). In the prior Report and Recommendation, this Court set-out the facts of the case in detail, and therefore, will not redo same here, but rather will incorporate the facts as appropriate within the arguments presented below.

■ The Plaintiff's first argument is that the ALJ erred in giving substantial weight to the RFC's that did not consider all of Warren's severe impairments. Specifically, the Plaintiff contends that the ALJ erred in not discussing her attorney's objections made at the hearing; and by giving substantial weight to the opinion of a person who is not an acceptable medical source under Social Security Regulations.

Any party has a right to appear before the administrative law judge. 20 C.F.R. § 416.1450(a). A party may also make his or her appearance by means of a designated representative. *Id.* The Hearings, Appeals and Litigation Manual ("HALLEX") is a policy manual written by the Social Security Administration to provide guidance on procedural matters. *See Howard v. Astrue*, 505 F.Supp.2d 1298, 1300 (S.D.Ala.2007) (*citing Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir.2000)). While the Eleventh Circuit has not specifically addressed whether the HALLEX creates judicially-enforceable rights, "[w]hat is certain, however, is that-if it does-remand is mandated only when the ALJ violates procedures in the HALLEX." *Tarver v. Astrue*, 2011 WL 206217, at *3 (S.D.Ala. Jan. 21, 2011).

Particular to the instant case is HALLEX 1-2-6-58, addressing the admission of evidence into the record at the hearing and instructing that "[t]he ALJ may rule on any objections on the record or issue a written ruling after the hearing on any objections raised at the hearing. The written ruling shall be made an exhibit and shall be mailed to the claimant. Post-hearing rulings may also be addressed in the written decision issued by the ALJ."

The Plaintiff does not contest that the ALJ took Warren's objections into consideration. (R. 30). Rather, Warren states that the ALJ erred in failing to discuss the objections made at the hearing. Here, the ALJ acknowledged the Plaintiff's objections at the hearing and using her discretion, as allotted by the HALLEX, declined to specifically address them. Because the ALJ followed the procedures of the HALLEX, the Court finds no error is present on this issue.

The Plaintiff's specific objections are centered around two Physical Residual Functional Capacity (hereinafter "RFC") Assessments. Warren argues the first assessment was not valid as it was not medical evidence from an acceptable medical source and therefore, should be assigned no evidentiary weight. The second assessment was created by a medical doctor, however, Warren argues her diagnosis of hypertension in said assessment was not considered by the ALJ.

■ Regarding Warren's initial objections, only "acceptable medical sources" can give medical opinions. 20 C.F.R. § 404.1527(a)(2). An "acceptable medical source" includes opinions from physicians, and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments. *Id.* In contrast, a single decision-maker (hereinafter "SDM") "will make the disability determination and may also determine whether the other conditions of eligibility for SSI payments based on disability are met." 20 C.F.R. § 416.1406(b)(2). "[A] SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources." *Kennedy v. Astrue*, 2010 WL 1643248, at *8 (S.D.Ala.2010) (*citing Bolton v. Astrue*, 2008 WL 2038513, *4

(M.D.Fla.2008)). Further, physical RFC assessment forms completed by a single decision-maker ("SDM"), are not opinion evidence at the appeal level. *See* POMS DI 24510.050.

The Defendant argues that while Christina Borres is not a doctor and is identified as an SDM, the ALJ's decision was still supported by substantial evidence as the subsequent physical RFC assessment was conducted by an acceptable medical source, Gary Carter, D.O. Dr. Carter's assessment was largely identical to that of Ms. Borres and additionally, both reviewers concluded the Plaintiff was capable of performing light work. This Court agrees.

The physical RFC assessment conducted by Christina Borres, SDM, concluded that the Plaintiff was occasionally limited to lift/carry over 20 pounds; frequently limited to lift/carry over 10 pounds; and she could stand and sit for 6 hours during an 8–hour workday. Environmental limitations included avoidance of concentrated exposure to cold, heat, humidity, and fumes, odors, dusts, gases and poor ventilation. (R. 274–281). The subsequent physical RFC assessment conducted by Gary Cater, D.O., found the Plaintiff could occasionally lift/carry over 20 pounds; frequently lift/carry over 10 pounds; and she could stand and sit for 6 hours during an 8–hour workday. Additional limitations included occasional climbing of ramps, stairs, ladders, ropes or scaffolds as well as the environmental limitations to fumes, odors, dusts, gases and poor ventilation. (R. 300–307).

Medical records created after the two physical assessments support the conclusions reached by Ms. Borres and Dr. Cater. The Plaintiff had been admitted to Broward Hospital in October 22, 2008 due to lightheadedness and dizziness. On the same day, medical records indicate the Plaintiff was able to ambulate in the halls without difficulty (R. 393) and upon an MRI examination, there was no evidence of an acute infarction, no evidence of intracranial enhancing mass, and there were no lesions present. (R. 405). A neurological assessment of the Plaintiff also concluded that her motor strength in her upper and lower, left and right extremities was normal. (R. 414).

■ In the instant case the ALJ mistakenly referred to both physical assessments as being performed by "state agency medical consultants." (R. 23). However, such an error was harmless because a subsequent physical RFC assessment was performed by an "acceptable medical source" who concluded, with virtually indistinguishable findings, that the Plaintiff was capable of performing light work. *See Patterson v. Astrue,* 2011 WL 1790192, *5 (M.D.Fla.2011) (holding "while [the SDM] was not a doctor, his opinion was subsequently concurred in by someone who is" and therefore reversal was not warranted).

Furthermore, the medical records upon which the ALJ based her decision documented the Plaintiff's steady gait, normal muscle strength in the upper and lower extremities and normal neurological examination, thereby providing medical evidence supporting the conclusions of the two assessments. Additionally, it is important to note that in determining the Plaintiff's RFC, the ALJ increased the Plaintiff's physical limitation restrictions. Unlike Dr. Cater, who limited Warren to occasional climbing of ramps, stairs, ladders, ropes or scaffolds, the ALJ in creating the Plaintiff's RFC restricted her to jobs without the climbing of ladders, ropes or scaffolds with additional environmental limitations to cold and heat. (R. 20–21).

■ Warren also contends her diagnosis of hypertension was not included within the ALJ's RFC determination. The Defendant argues that the Plaintiff was found

to be able to perform a modified range of light work despite her hypertension.

■ RFC opinions are opinions on issues reserved for the Commissioner because "they are administrative findings that are dispositive of a case; i.e., that would direct the determination of disability." See 20 C.F.R. § 404.1527(e). The ALJ must determine how a claimant's impairments limit her ability to work. *Moore v. Barnhart*, 405 F.3d 1208, 1213, n. 6 (11th Cir.2005). The Commissioner may deny benefits for the failure to follow treatment when the claimant, without good reason, fails to follow a prescribed course of treatment that could restore the ability to work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir.1990).

Here, the ALJ correctly determined the Plaintiff's diagnosis of hypertension did not limit her ability to work. While the Plaintiff had a history of hypertension beginning in 1994, she also had a history of noncompliance with taking her medication. Progress notes and admission entries indicated Warren had decreased compliance, was "off and on medication" and in one instance upon arrival in triage, had "not been taking BP [blood pressure] med[ication]." (R. 218, 248, 330). Additionally, as noted by the ALJ, the Plaintiff was found to be normal upon physical examination. (R. 22–23). This Court concludes that for the aforementioned reasons the ALJ's RFC decision is based upon substantial evidence and remand on this point is not warranted.

The Plaintiff's second point of contention is that substantial evidence does not support the testimony of the vocational expert. Specifically, Warren argues the testimony of the vocational expert (hereinafter "VE") conflicts with the *Dictionary of Occupational Titles* ("DOT"), and the ALJ failed to resolve the conflict. Further, the Plaintiff argues that the vocational expert did not take into account the Plaintiff's moderate difficulties in concentration.

As previously noted, Judge Jordan found that the ALJ properly accounted for the Plaintiff's limitations in concentration, persistence, and pace. However, there are issues remaining. Specifically, whether the testimony of the VE conflicted with the DOT; whether the ALJ was accurate in her assessment of Warren's limitations or whether the alleged omission of Dr. McCallister's opinion render the hypothetical invalid under *Winschel*.

In regards to the issue of whether a conflict was present between the VE's testimony and the DOT, it is noted that the Plaintiff does not dispute the VE's testimony on the basis that it conflicted with the definition of unskilled, light, or sedentary work. Rather, the Plaintiff argues the work as a table worker, fruit distributor or stuffer, involved work around fumes, odors, dusts, or gases; the job as a table worker requires work to be done at a pace; and the job as a fruit distributor is not limited to simple, routine tasks.

■■ "[W]hen the VE's testimony conflicted with the DOT, the VE's testimony "trumps" the DOT." *Leonard v. Comm'r of Soc. Sec.*, 409 Fed.Appx. 298, 300–301 (11th Cir.2011) (unpublished) (*quoting Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999)). "When an apparent conflict between the VE's testimony and the DOT arises, however, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony." *Leonard* at 301; See also SSR 00–4p; 65 Fed.Reg. 75759 (Dec. 4, 2000).

■ The ALJ addressed the Plaintiff's limitations to fumes, odors, dust, and gases, by limiting Warren to only occasional exposure. (R. 20–21). Upon examination of the vocational expert, the ALJ specifically addressed this issue and asked,

"What about, though, exposure to … environmental irritants, such as chemical products, fumes and gases?" To which the VE asserted, "… the classification of jobs, which indicates environmental conditions for the jobs in the DOT does not indicate any exposure to those types of conditions for these jobs that I've selected." (R. 54). The VE further indicated dust was in every work environment, unless it was sterile, none of the jobs included exposure to environmental conditions, and his testimony was consistent with the DOT. (R. 54, 59).

The ALJ was not required to resolve a conflict between the testimony of the VE and the DOT because a conflict did not exist. The ALJ appropriately limited the Plaintiff to a working environment with only occasional exposure to fumes, odors, dust and gases. This limitation was addressed at the hearing when the VE specifically stated the jobs selected precluded contact to these specific environmental elements. Further, the DOT definitions of the jobs listed by the VE did not include exposure to any airborne elements.

Additionally, as the ALJ accounted for Warren's moderate limitations in concentration, persistence, and pace, the positions of a table worker and fruit distributor similarly did not provide a basis for conflict. Citing to 20 C.F.R. § 404.1568(a) (defining unskilled work) and SSR 00–4p (corresponding unskilled work to an SVP of 1–2), the court in *Anderson v. Astrue*, 2011 WL 3843683, at *4 (S.D.Ala. Aug. 30, 2011) found that "there was no actual conflict between the vocational expert's testimony that Plaintiff could perform the cited unskilled jobs and the applicable DOT information because all of the jobs have a [Specific Vocational Preparation] SVP of 2, which correlates to unskilled worked." Likewise, in this case, each enumerated position provided by the VE was cited as unskilled work with a SVP of 2. The Court

finds there was no conflict between the VE's testimony and the DOT.

Next, this Court must determine whether the ALJ mistakenly failed to incorporate Dr. McCallister's medical opinion into the hypothetical posed to the vocational expert.

When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. *Humphries v. Barnhart*, 183 Fed.Appx. 887, 891 (11th Cir.2006) (*citing Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir.2004)). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002).

Limitations to simple, routine tasks or unskilled work, typically are not sufficient to account for a claimant's moderate limitations in concentration, persistence or pace. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir.2011) (*citing Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir.2009) (per curiam)). However, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.*

In a mental RFC assessment, Dr. McCallister indicated that in the category of sustained concentration and persistence, the Plaintiff was moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods." (R. 257). The Plaintiff argues because the ALJ failed to include this limitation in the hypothetical posed to the vocational expert, remand is warranted.

While Dr. McCallister found the Plaintiff to be moderately limited in her ability to complete a normal workday, nevertheless, Dr. McCallister opined in narrative form that although her mental condition may contribute to difficulties with sustained concentration and persistence, she appeared to be capable of simple, routine tasks and there were no signs of social behavior or adaptation limitations. (R. 258). Such language is mirrored by the ALJ in her hypothetical question to the vocational expert who limited the hypothetical to simple, routine tasks. *See, Scott v. Astrue,* 2010 WL 2697014, at *6 (N.D.Fla. July 8, 2010) (noting that the hypothetical individual was limited to "simple low stress unskilled jobs with one, two, and three step instructions," and while the doctor had noted the claimant was moderately limited in her ability to complete a workday, the doctor also found the claimant could perform work involving simple instructions.); *Figgs v. Astrue,* 2011 WL 5357907, at *9 (M.D.Fla. Oct. 19, 2011) (holding that despite the Plaintiff's argument that the hypothetical did not include moderate limitations in the ability to complete a normal workday or workweek, "the ALJ's decision is consistent with *Winschel* because there is sufficient medical evidence to support the ALJ's implicit finding that Plaintiff can perform 'simple routine, repetitive tasks' despite her moderate limitations in concentration, persistence and pace").

Because the ALJ's hypothetical to the vocational expert was limited to "simple routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions," the hypothetical was consistent with Dr. McCallister's opinion, upon which the ALJ accorded substantial weight. Accordingly, with regard to the opinion of Dr. McCallister, neither the Plaintiff nor the record supports a finding that the ALJ posed an improper hypothetical to the VE. Under *Winschel,* the ALJ properly accounted for Warren's limitations and as such, the decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED.** Accordingly, the Motion for Summary Judgment filed by the Defendant (D.E. # 21) should be **GRANTED** and the Motion for Summary Judgment filed by the Plaintiff (D.E. # 18) should be **DENIED.**

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Adalberto Jordan, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), cert. denied, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).